IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:23-CV-451-BO-RJ

| | |
|---|---|
| JULIANA R. LAMBERTUS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | ORDER |
| ) | |
| NUVO SOLUTIONS, INC., ) | |
| ) | |
| Defendant. ) | |

This cause comes before the Court on defendant's motion for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure. [DE 12]. Plaintiff has responded, defendant has replied, and in this posture the matter is ripe for ruling. For the reasons that follow, defendant's motion is granted in part and denied in part. Defendant has also filed a motion to stay discovery pending the resolution of its motion for judgment on the pleadings, which is denied as moot.

BACKGROUND

This action arose from a complaint filed by plaintiff, Juliana Lambertus, in this Court on August 15, 2023. The following factual background has been derived from plaintiff's allegations in her complaint. Plaintiff began working as Controller for Nuvo Solutions (Nuvo or defendant) in November 2020 after having worked in finance management for eleven years. [DE 1 ¶¶ 5, 15]. She was hired to "build Defendant's finance overhead department from the ground up." [DE 1 ¶ 17]. After being hired, plaintiff began discovering systemic and ongoing problems with Nuvo's "payroll system, policies and collections practices." [DE 1 ¶ 18]. Plaintiff alleges that she addressed those issues and was promised commissions and other compensation for that additional

work, as it was outside the scope of her role. *Id.* Though she received positive verbal feedback from Nuvo's CEO, Emily Brown, plaintiff alleges that she never received the promised compensation. [DE 1 ¶ 19]. Plaintiff otherwise received "stellar performance reviews and was consistently praised for her work." [DE 1 ¶ 21].

After starting at the company, plaintiff received two pay increases: one in November 2021, and the second on February 14, 2022. [DE 1 ¶¶ 22, 23]. She alleges that the 2022 pay increase was to include an increase in base salary, a bonus, and the use of a company car, but that she did not receive these benefits. [DE 1 ¶ 23]. Plaintiff began to raise concerns about Nuvo's "unlawful financial conduct, failure to pay her agreed-upon wages and unsafe working conditions[.]" [DE 1 ¶ 24].

In addition to not receiving promised compensation, plaintiff alleges that she was subjected to gender discrimination. [DE 1 ¶ 25]. Though CEO Brown was female, she was harder on female employees than male employees and as a result female employees had a difficult time finding success within the company. [DE 1 ¶ 26]. Plaintiff alleges that female employees were placed in administrative and support jobs while men were placed in management and sales positions. [DE 1 ¶ 27]. Although plaintiff was a Controller, her roll was deemed administrative, while her male counterpart was deemed to be management. [DE 1 ¶ 29]. Additionally, though plaintiff negotiated a salary increase in February 2022, she was not paid the negotiated rate, and she alleges that none of her male counterparts were treated similarly. [DE 1 ¶ 30].

Plaintiff alleges she repeatedly brought forward concerns to defendant's management team about compensation practices, including failing to pay out paid-time-off, and the need for human resources professionals, but these concerns were ignored. [DE 1 ¶¶ 32 -35]. Once plaintiff began to complain, CEO Brown failed to take any remedial actions and began to treat plaintiff more

harshly than other employees who did not complain by, for example, ignoring plaintiff's requests for time off. [DE 1 ¶¶ 36-37]. Plaintiff also complained about what she perceived as an unsafe work environment as a result of defendant's stressful and tense culture, which had been witnessed by visitors, and was resulting in both emotional distress for employees and high employee turnover. [DE 1 ¶¶ 39-43]. On May 13, 2023, plaintiff sent an email to CEO Brown; David Brown, the President of Nuvo; and several other high-ranking professionals which detailed allegations of an emotionally unsafe working environment at Nuvo. [DE 1 ¶¶ 41, 95]. Three days after plaintiff sent this email, plaintiff was suspended pending an investigation. *See* [DE 1 ¶¶ 47, 87, 98, 107]. Plaintiff remained suspended without any contact from defendant for a period of weeks and felt she had to resign so that she could seek paid work. [DE 1 ¶ 48]. Plaintiff also alleges that she was terminated by President Brown during a phone call on June 3, 2022, and that plaintiff contemporaneously resigned. [DE 1 ¶¶ 48, 50].

Plaintiff alleges a claim for sex discrimination in violation of Title VII (Count I), retaliation in violation of Title VII (Count II), violations of the North Carolina Wage & Hour Act (Count III), wrongful termination in violation of North Carolina public policy for reporting violations of the Wage & Hour Act (Count IV), wrongful termination in violation of North Carolina public policy for reporting violations of the Occupational Safety and Health Act of North Carolina (Count V), wrongful termination in violation of North Carolina public policy based on the North Carolina Equal Employment Practices Act (Count VI), and negligent infliction of emotional distress (Count VII). Plaintiff also seeks punitive damages (Count VIII).

In its motion for judgment on the pleadings, defendant argues that Count I is barred by the statute of limitations and otherwise fails to state a claim, that plaintiff has failed to allege the requisite elements for Count II, that plaintiff has failed to allege any enforceable promise for any

compensation she claims she is owed in Count III, that plaintiff failed to exhaust her administrative remedies or otherwise state a claim in Counts IV-VI and that repacking these claims as wrongful discharge claims fails, that plaintiff fails to allege any extreme and outrageous circumstances to support her infliction of emotional distress claim in Count VII, and that plaintiff has failed to allege any aggravating factors which would support a claim for punitive damages in Count VIII.

## DISCUSSION

A Rule 12(c) motion is considered under the same standard as a Rule 12(b)(6) motion. *Alexander v. City of Greensboro*, 801 F. Supp. 2d 429, 433 (M.D.N.C. 2011). Thus, "the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993). A complaint must allege enough facts to state a claim for relief that is facially plausible. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). However, this standard does not permit a plaintiff to merely plead the elements of a cause of action alongside legal conclusions; the Court need not accept those as true. *Id.* at 555.

The primary distinction between Rules 12(b)(6) and 12(c) is that Rule 12(c) permits a court to consider a defendant's answer in addition to plaintiff's complaint. However, a defendant cannot rely on allegations of fact as provided in the answer if they are contradictory to the facts presented in the complaint. *Mendenhall v. Hanesbrands, Inc.*, 856 F. Supp. 2d 717, 724 (M.D.N.C. 2012). "A Rule 12(c) motion tests only the sufficiency of the complaint and does not resolve the merits of the plaintiff's claims or any disputes of fact." *Drager v. PLIVA USA, Inc.*, 741 F.3d 470, 474 (4th Cir. 2014). Judgment on the pleadings should be granted therefore only "where the moving party is clearly entitled to the judgment it seeks as a matter of law." *Med-Trans Corp. v. Benton*, 581 F. Supp. 2d 721, 728 (E.D.N.C. 2008).

A. *Statute of limitations and exhaustion*

Defendant contends that Count I (Title VII sex discrimination claim) is time-barred because plaintiff was required to file a claim with the U.S. Equal Employment Opportunity Commission ("EEOC") within 180 days of the alleged acts of discrimination and she failed to do so. [DE 13 pp. 4-5]. This statute of limitations bars EEOC claims from being filed beyond 180 days after the time of the employer's alleged unlawful act. *See* 42 U.S.C. § 2000e-5(e)(1). In 2009, the Lilly Ledbetter Fair Pay Act (FPA) amended Title VII to specify that, among other examples, "an unlawful employment practice occurs . . . when an individual is affected by application of a discriminatory compensation decision . . ., including *each time* wages, benefits, or other compensation is paid." Pub. L. No. 111-2, § 3, 123 Stat. 5, 5-6 (emphasis added); *Taylor v. Millennium Corp.*, No. 1:15-CV-1046, 2016 WL 927185, at *3 (E.D. Va. Mar. 4, 2016) ("Under the FPA, each pay period triggers a new [] clock for filing a Title VII discriminatory compensation claim."). Thus, plaintiff's allegation of unfair withholding of promised compensation would be considered within the statute of limitations if it continued up until her last day at Nuvo. As the question of whether such compensation was ever promised is still in dispute, that is an issue of material fact which must continue on to discovery. *See also Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (2007) (affirmative defense that a complaint is barred by a statute of limitations generally not the basis of Rule 12(b)(6) dismissal). Additionally, defendant agrees that plaintiff's suspension and termination occurred within 180 days of her filing an EEOC claim, and thus her claims arising from those actions are not untimely.

Defendant also argues that plaintiff failed to exhaust Counts IV and V as required by the Retaliatory Employment Discrimination Act (REDA), N.C. Gen. Stat. §§ 95-240, *et seq*. Plaintiff has argued that, contrary to Nuvo's argument, she did file a written complaint with the North

5

Carolina Commissioner of Labor as is required by REDA, thus exhausting her claims. Plaintiff has requested leave to amend her complaint to include such allegation if necessary. The Court will permit plaintiff a brief period within which to amend her complaint to add this allegation and will not dismiss her REDA claims for failure to exhaust at this stage.[1]

B. *Title VII claims*

"In the context of a Title VII case, 'an employment discrimination plaintiff need not plead a prima facie case of discrimination' to survive a motion to dismiss.'" *Bing v. Brivo Sys., LLC*, 959 F.3d 605, 616 (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 515 (2002)); *see Wood v. City of Greensboro*, 855 F.3d 639, 648 (4th Cir. 2017). Rather, a plaintiff must allege facts plausibly stating a claim that "satisf[ies] the elements of a cause of action created by [Title VII]." *Bing*, 959 F.3d at 616–17; *see also Gaines v. Balt. Police Dep't*, 657 F.Supp.3d 708, 734 (D. Md. 2023) ("Although a plaintiff need not assert a prima facie claim of discrimination under Title VII to survive a Rule 12(b)(b)(6) motion, reference to the elements of a Title VII claim is helpful to gauge the sufficiency of the allegations.").

In Count I plaintiff alleges that she was discriminated against in her terms, conditions, compensation, and privileges of her employment because of her sex. To establish a prima facie case for sex discrimination, a plaintiff must show "(1) membership in a protected class, (2) satisfactory job performance, (3) adverse employment action, and (4) different treatment from similarly situated employees outside the protected class." *Coleman v. Md. Ct. App.*, 626 F.3d 187, 190 (4th Cir. 2010).

---

[1] Nuvo relies on *Ferrell v. Am. Airlines, Inc.*, No. 323CV00023KDBDCK, 2023 WL 6628869, at *1 (W.D.N.C. Oct. 11, 2023), to argue that the Court *must* dismiss the REDA claims because plaintiff failed to plead exhaustion, but defendant fails to note that the *Ferrell* court dismissed the complaint only after Ferrell opposed dismissal but did not provide any grounds for denying the motion to dismiss.

6

Nuvo contends that plaintiff has not sufficiently alleged adverse employment action and that she has not sufficiently alleged that she was treated differently from similarly situated employees outside of her class. The Court finds plaintiff's allegations at this stage to be sufficient. First, plaintiff has alleged that her male counterpart was categorized as management while plaintiff's role was administrative. Plaintiff has also alleged that she was not paid her negotiated salary or earned bonuses and commissions, unlike her male counterparts. Plaintiff's allegations also support the reasonable inference that she was treated differently from similarly situated male employees, including by alleging a male counterpart with the same title who had been categorized as management. Drawing all reasonable inferences in plaintiff's favor, this is sufficient at this early stage to state a Title VII sex discrimination claim.

Count II alleges retaliation in violation of Title VII. To assert such a claim, plaintiff must show that (1) she engaged in protected activity, (2) her employer took adverse action against her, and (3) and the protected activity and adverse action were causally connected. *Karpel v. Inova Health Sys. Servs.*, 134 F.3d 1222, 1228 (4th Cir. 1998). To prevail on a retaliation claim, plaintiff must show that she "*subjectively* (that is, in good faith) believed" that there was a Title VII violation "and that [her] belief 'was *objectively* reasonable in light of the facts.'" *Johnson v. Mechanics & Farmers Bank*, 309 F. App'x 675, 685 (4th Cir. 2009).

Defendant contends that plaintiff has not sufficiently alleged any of the three elements of this claim. In considering whether there was protected activity, there exists an issue of material fact as to the "repeated, verbal complaints to CEO [Brown] and President Brown" that plaintiff allegedly made regarding sex discrimination at Nuvo. *Compare* [DE 17 p. 14 & n.6] *with* [DE 13 p. 8-9]. There is also an issue of material fact regarding the alleged adverse employment action as claimed in the complaint. Plaintiff alleged that she resigned "due to the fact that she was being
7

terminated," and because the lack of communication from defendant regarding her unpaid suspension gave her "no choice but to resign so that she could seek paid employment." [DE 1 ¶¶ 48, 50]. Defendant contends that voluntary resignation bars a claim of adverse employment action where no alleged facts support a constructive discharge theory. [DE 13 p. 10]. Defendant further states that plaintiff "does not allege a constructive discharge, or any facts that could support such a theory." [DE 13 p. 10 n. 3]. However, a constructive discharge theory under Title VII can be supported if the plaintiff demonstrates either that the employer intended to force her to quit, or if the employer engaged in conduct of which the employee's resignation would be a "foreseeable consequence." *Martin v. Cavalier Hotel Corp.*, 48 F.3d 1343, 1356 (4th Cir. 1995). Again, viewing the factual allegations in the light most favorable to the plaintiff, there are sufficient allegations in the complaint to make plausible a constructive discharge theory of retaliation under Title VII. Plaintiff has also alleged that she was suspended without pay as a result of her complaints, which can alone amount to an adverse employment action. *Hammoud v. Jimmy's Seafood, Inc.*, 618 F. Supp. 3d 219, 232 (D. Md. 2022). Finally, the temporal proximity between plaintiff's alleged complaints and her suspension and termination or resignation further permits the Court to infer more than merely the possibility that defendant engaged in misconduct. *See Roberts v. Glenn Indus. Grp., Inc.*, 998 F.3d 111, 126 (4th Cir. 2021). The motion for judgment on the pleadings is denied as to Count II.

C. *NC Wage & Hour claim*

Count III alleges a violation of North Carolina's Wage and Hour Act (NCWHA), specifically N.C. Gen. Stat. § 95-25.6. [DE 1 ¶¶ 74-77]. This claim has been sufficiently alleged, as plaintiff has alleged that she was promised wages and benefits which were owed but not paid. *See, e.g., Wade v. JMJ Enterprises*, LLC, No. 1:21CV506, 2023 WL 6391683, at *2 (M.D.N.C.

8

Sept. 30, 2023) (allegations that plaintiffs were not paid for all hours worked sufficient to state a Wage & Hour claim). Contrary to Nuvo's argument, "the statute contains no requirement of an express contract or agreement to pay for particular work." *Martinez-Hernandez v. Butterball, LLC*, 578 F. Supp. 2d 816, 821 (E.D.N.C. 2008). Plaintiff's allegations are sufficient, and judgment on the pleadings is not warranted.

D. *State law retaliation and public policy claims*

Counts IV, V, and VI are plaintiff's three North Carolina state law retaliation claims. Count IV alleges wrongful termination in violation of North Carolina public policy for reporting violations of the NCWHA, as prohibited by N.C. Gen. Stat. § 95-241(a)(1)(b). [DE 1 ¶ 82]. Count V alleges wrongful termination in violation of North Carolina public policy for reporting violations of Occupational Safety and Health Act of North Carolina (OSHANC), as prohibited by N.C. Gen. Stat. § 95-241(a)(1)(b). [DE 1 ¶ 93]. Count VI alleges wrongful termination in violation of North Carolina public policy based on the North Carolina Equal Employment Practices Act (NCEEPA). [DE 1 ¶ 108]. As their arguments have the same statutory basis, Counts IV and V may be considered together, while Count VI's NCEEPA claim raises separate issues. Plaintiff argues that she has alleged these claims in the alternative to one another, as is permitted by Fed. R. Civ. P. 8. [DE 17 p. 20].

The basis for Counts IV and V, North Carolina's REDA, prohibits retaliatory actions taken by employers against employees who, in good faith, exercise or threaten to exercise their protected rights as employees in North Carolina. N.C. Gen. Stat. § 95-241. These protected rights include the right to "[f]ile a claim or complaint, initiate any inquiry, investigation, inspection, proceeding or other action, or testify or provide information to any person with respect to", *inter*

*alia*, Article 2A or Article 16 of Chapter 95 of the North Carolina General Statutes. *Id*. Article 2A lays out the NCWHA, and Article 16 lays out the OSHANC regulations.[2]

In order to establish a REDA claim, a plaintiff must show that (1) she exercised her right to engage in protected activity; (2) she suffered an adverse employment action; and (3) there is a causal connection between the two. *See Brackett v. SGL Carbon Corp.*, 158 N.C. App. 252, 260 (2003). Defendant contends that plaintiff has not satisfied any of these three elements, as laid out in the arguments against plaintiff's Title VII claims.

First, REDA protects the actions of filing "a claim or complaint, initiat[ing] any inquiry, investigation, inspection, proceeding or other action, . . . or *provid[ing] information to any person* with respect to" the state statutes in question. N.C. Gen. Stat. § 95-241(a)(1) (emphasis added). "By its plain language, it is clear that REDA does not limit protected activities to the sole act of filing a formal claim." *Pierce v. Atl. Grp., Inc.*, 219 N.C. App. 19, 27 (2012) (quoting *Jurrissen v. Keystone Foods, LLC*, No. 1:08CV128, 2008 WL 3925086, at *5 (M.D.N.C. Aug 20, 2008)). However, not all forms of informal reports constitute protected activities under REDA. *Id.*; *see also Delon v. McLaurin Parking Co.*, 367 F. Supp. 2d 893, 902 (M.D.N.C.), *aff'd* 146 F. App'x 655 (4th Cir. 2005) ("[M]erely a complaint to a manager about a supervisor" not a protected activity under REDA); *but see Driskell v. Summit Contracting Group, Inc.*, 828 F. App'x 858, 867

---

[2] Additionally, despite North Carolina's at-will employment regime there exists a long-settled exception by which termination is deemed wrongful if it violates North Carolina public policy. However, this exception is "confined to the express statements contained within [the North Carolina] General Statutes or [] Constitution." *Whiting v. Wolfson Casing Corp.*, 173 N.C. App. 218, 222 (2005). Thus, any action brought pursuant to REDA is a "supplemental remedy to the common law claim of wrongful discharge." *Id.*, citing *Salter v. E & J Healthcare, Inc.*, 155 N.C. App. 685, 695-96 (2003); *see also Amos v. Oakdale Knitting Co.*, 331 N.C. 348, 357 (1992) ("The availability of alternative common law and statutory remedies, we believe, supplements rather than hinders the ultimate goal of protecting employees who have been fired in violation of public policy."). The Court construes the claims in Counts IV and V to be brought under REDA, not as common law wrongful discharge claims.

(4th Cir. 2020) ("Internal complaints alleging ongoing ... violations ... can be protected."). In assessing whether a particular complaint is protected by REDA, a court should consider: whether it leads to or relates to an investigation, whether it is made to someone other than the plaintiff's direct supervisors or managers within the company, and whether the relevant conduct is a primary focus of the complaint. *See Driskell*, 828 F. App'x at 867.

Here, plaintiff's alleged protected action is a series of internal complaints to CEO Brown and President Brown regarding state law violations by Nuvo. *See, e.g.,* [DE 1 ¶¶ 34-37, 39-45, 83, 94]. There is no contention that any of these complaints were part of an ongoing investigation. As for the second factor, *Driskell* established that complaints to a president and/or CEO go beyond complaints to a "mere supervisor or manager." 828 F. App'x at 867. As plaintiff was directing her complaints directly to the CEO and the president of the company, she could not have directed them elsewhere or higher up in the company hierarchy. When she sent a formal email complaining of the workplace safety issues, she also included other management and a human resources representative. [DE 1 ¶ 41]. Finally, whether the relevant conduct is a primary focus of the complaints made remains a question of fact. Without further documentation of the series of complaints alleged in plaintiff's complaint, this Court cannot definitively determine that plaintiff's conduct was not protected under REDA.

The second element requires an adverse employment action. *See Brackett*, 158 N.C. App. at 260. That adverse employment action can include "suspension, demotion, retaliatory relocation of an employee, or other ... action taken against an employee in the terms, conditions, privileges, and benefits of employment." *Salter*, 155 N.C. App. at 69; *see also Nguyen v. Austin Quality Foods, Inc.*, 974 F. Supp. 2d 879, 891 (E.D.N.C. 2013) ("For purposes of REDA, an adverse or retaliatory action is defined to include suspension as well as termination."). Taking plaintiff's

allegations as true, she was placed on unpaid suspension for weeks after her May 13 email to management. [DE 1 ¶¶ 47-48]. She eventually felt forced to resign and did so "[c]ontemporaneous[ly] with her termination[,]" [DE 1 ¶¶ 48, 50], supporting an allegation of both termination or constructive discharge. Defendant does not deny that plaintiff was suspended. [DE 10 ¶ 47]. At a minimum, the suspension satisfies the adverse employment action as required by the second element of a REDA claim, even if discovery later reveals that plaintiff resigned rather than was terminated. *See Cortes v. McDonald's Corp.*, 955 F. Supp. 539, 540 (E.D.N.C. 1996).

The third and final element is causation. Courts have repeatedly held that evidence of close temporal proximity between the protected activity and the adverse action can satisfy this requirement. *See, e.g., Nguyen*, 974 F. Supp. 2d at 891; *Johnson v. Trustees of Durham Tech. Cmty. Coll.*, 139 N.C. App. 676, 682 (2000). Plaintiff alleges that her suspension occurred three days after her email to management, the last in a string of allegedly repeated complaints about ongoing violations. Plaintiff further alleges that her termination occurred three weeks after she was suspended. The allegations are sufficient for this Court to find there is a plausible set of facts which establish a valid claim of retaliation in violation of REDA and contrary to North Carolina public policy. Thus, at this stage, Counts IV and V are not dismissed.

The facts underlying Counts IV and V are largely the same as those underlying Count VI, but this claim is brought as a common law wrongful discharge claim under the NCEEPA rather than a REDA claim. NCEEPA's outline of public policy is as follows: "[i]t is the public policy of this State to protect and safeguard the right and opportunity of all persons to seek, obtain and hold employment without discrimination or abridgment on account of race, religion, color, national origin, age, sex or handicap by employers which regularly employ 15 or more employees." N.C. Gen. Stat. § 143-422.2(a). Neither the N.C. General Statutes nor North Carolina's Constitution

12

establish a private right of action provided by the NCEEPA for claims of adverse action in retaliation for complaining about a protected category. *See McLean v. Patten Communities, Inc.*, 332 F.3d 714, 719 (4th Cir. 2003) ("[A]bsent a clear indication from the North Carolina courts or legislature it would be inappropriate for a federal court to create a private right of action under § 143-422.2." (internal quotations, alterations, and citations omitted)). A plaintiff may, however, bring a common law wrongful discharge claim for violation of NCEEPA. *Id.*

However, courts have consistently held that constructive discharge cannot form the basis of a common law wrongful discharge claim based upon NCEEPA. *Williams v. Target Corp.*, No. 3:10CV136-RJC-DSC, 2010 WL 2650847, at *3 (W.D.N.C. Apr. 22, 2010), *report and recommendation adopted,* No. 3:10CV136-RJC-DSC, 2010 WL 2650845 (W.D.N.C. July 1, 2010). Additionally, courts considering wrongful discharge claims based upon NCEEPA have held "repeatedly that no private cause of action exists for retaliation, hostile work environment, disparate treatment, or constructive discharge in violation of public policy." *Jones v. Duke Energy Corp.*, 43 F. App'x 599, 600 (4th Cir. 2002) (per curiam); *see Mullis v. Mechanics & Farmers Bank*, 994 F. Supp. 680, 688 (M.D.N.C. 1997) (North Carolina has not interpreted NCEEPA wrongful discharge claim to include retaliation).

Plaintiff alleges that she participated in protected activity and reported violations of NCEEPA to her employer and that she was discharged from her employment in retaliation for such conduct. [DE 1 ¶¶ 105-108]. Thus, because plaintiff's NCEEPA common law wrongful discharge claim is based upon retaliation and disparate treatment, and to the extent it concerns what plaintiff contends amounted to constructive discharge, the claim is appropriately dismissed. *See also*

*Malik v. Amazon.com Prices, LLC*, No. 3:21-CV-627-MOC-DCK, 2024 WL 150763, at *8 (W.D.N.C. Jan. 12, 2024) (claims rooted in retaliation cannot support a wrongful discharge claim under NCEEPA).

E. *Negligent infliction of emotional distress*

Count VII alleges negligent infliction of emotional distress (NIED). In order to state an NIED claim, a plaintiff must allege that "(1) the defendant negligently engaged in conduct, (2) it was reasonably foreseeable that such conduct would cause the plaintiff severe emotional distress (often referred to as 'mental anguish'), and (3) the conduct did in fact cause the plaintiff severe emotional distress." *Guthrie v. Conroy*, 152 N.C. App. 15, 25 (2002). "'In order to establish actionable negligence, a plaintiff must show that: (1) defendant failed to exercise due care in the performance of some legal duty owed to plaintiff under the circumstances; and (2) the negligen[t] breach of such duty was the proximate cause of the injury.'" *Id.* (alteration in original, citation omitted).

Defendant's primary objection to this claim is that many of the specific actions alleged are intentional actions, not negligent ones. [DE 13 p. 23]; *see, e.g.,* [DE 1 ¶¶ 37, 47]. An NIED cause of action cannot be supported by facts that include only intentional acts. *See Mitchell v. Lydall, Inc.*, 16 F.3d 410, 1994 WL 38703, at *3 (4th Cir. Feb. 10, 1994) (unpublished) ("[As] the material factual allegations charge nothing but intentional acts . . ., we must conclude that they do not state a claim for negligent infliction of emotional distress."). Plaintiff contends that while the conduct itself may have been intentional, its impact and the injury caused to her was negligent, citing *Pleasant v. Johnson*, 312 N.C. 710, 715 (1985). [DE 17 p. 27-28]. However, "the district courts of this state have repeatedly . . . dismiss[ed] negligent infliction of emotional distress claims where plaintiffs only allege intentional conduct on the part of the tortfeasor." *S.P. by & through Prybol*

*v. St. David's Sch.*, No. 5:22-CV-201-FL, 2023 WL 6447228, at *5 (E.D.N.C. Sept. 29, 2023) (listing cases); *see also Horne v. Cumberland Cnty. Hosp. Sys.*, 228 N.C. App. 142, 149 (2013) ("Allegations of intentional conduct, such as these, even when construed liberally on a motion to dismiss, cannot satisfy the negligence element of an NIED claim."). As the material allegations in plaintiff's complaint point to intentional conduct by defendant, such as cruel and callous treatment of plaintiff, judgment on the pleadings in defendant's favor is appropriate on plaintiff's negligent infliction of emotional distress claim.

F. *Punitive damages*

"A punitive damages claim is not technically an independent cause of action, but is instead dependent upon an award of compensatory damages on one of a plaintiff's other claims." *Taylor v. Bettis*, 976 F. Supp. 2d 721, 747 (E.D.N.C. 2013). Whether punitive damages are available will depend first on whether compensatory damages may be awarded. The Court will not dismiss the request for punitive damages at this stage.

In sum, the Court has considered plaintiff's complaint in light of the applicable standards and determines that plaintiff has plausibly alleged the majority of her claims for relief. It further finds that many of defendant's arguments are better suited for decision at a later stage of the proceeding and the case should therefore move forward to discovery.

CONCLUSION

Accordingly, for the foregoing reasons, defendant's motion for judgment on the pleadings [DE 12] is GRANTED IN PART and DENIED IN PART. Judgment on the pleadings in defendant's favor is GRANTED as to Counts VI and VII. Defendant's motion with respect to plaintiff's remaining claims is DENIED. The motion to stay discovery [DE 14] is DENIED AS

MOOT. Plaintiff is permitted ten (10) days from the date of entry of this order to file an amended complaint in accordance with the foregoing.

SO ORDERED, this \_\_10\_\_ day of July 2024.

TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE