IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:23-CV-451-BO-RJ

JULIANA R. LAMBERTUS,          )
                               )
            Plaintiff,         )
                               )
      v.                       )          O R D E R
                               )
NUVO SOLUTIONS, INC.,          )
                               )
            Defendant.         )

This cause comes before the Court on defendant's motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Plaintiff has responded, defendant has replied, and the motion is ripe for disposition. For the reasons that follow, the motion is granted in part and denied in part.

BACKGROUND

Plaintiff instituted this action by filing a complaint against her former employer on August 15, 2023. [DE 1]. Defendant appeared, answered, and filed a motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c). The Court granted in part and denied in part defendant's motion and permitted plaintiff an opportunity to file an amended complaint. [DE 21]. In her amended complaint, plaintiff alleges the following claims for relief: sex discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a); retaliation for participating in protected activity in violation of Title VII, *id.* § 2000e-3(a); violations of the North Carolina Wage and Hour Act (NCWHA), N.C. Gen. Stat. § 95-25.1, *et seq.*; wrongful termination in violation of North Carolina public policy in retaliation for reporting violations of the NCWHA; and wrongful termination in violation of North Carolina public policy for reporting violations of the

Occupational Safety and Health Act of North Carolina (OSHANC), N.C. Gen. Stat. § 95-126, *et seq*.

As this matter is before the Court on defendant's motion for summary judgment, the Court relies on the statement of undisputed material fact filed by defendant and plaintiff's response thereto in order to recite the factual background. [DE 29]; [DE 31]. Unless otherwise indicated, the following facts are undisputed.

Defendant Nuvo Solutions (defendant or Nuvo) is a small business that assists other businesses in procuring, setting up, and otherwise managing mobile devices. Nuvo was founded by Dave and Emily Brown in 2016 out of their home garage. It has since grown to approximately thirty employees. Dave Brown is the president and a salesman and Emily Brown is the CEO and primary decision-maker. Emily Brown is also the majority owner of defendant. The first three employees hired by Dave and Emily Brown were women.

Plaintiff was hired by Nuvo as Controller in November 2020. Plaintiff was hired to handle finances because the company had grown quickly and, according to plaintiff, her job was to build the finance overhead department from the ground up. Plaintiff did not have a CPA license when she was hired. Plaintiff's position was classified as administrative and she was on the leadership team, which was typically comprised of the highest employee in each department or group. When plaintiff worked for Nuvo, the leadership team was always majority women. When plaintiff was hired, Nuvo's employee handbook contained a sex discrimination policy, which plaintiff acknowledged reading and understanding.

While plaintiff worked for Nuvo, she performed research on the market rate of pay for Nuvo's employees. Plaintiff's research showed that she and another female employee were being paid below the market benchmark. Plaintiff and the other female employee identified were given

2

raises. After Nuvo hired a general manager, there were five designated managers, two of whom were men and three of whom were women. Tucker Goodman, male, was hired as general manager while plaintiff worked for Nuvo. When plaintiff was hired, the leadership team was comprised of five women and two men. Plaintiff contends that Nuvo classified male employees as "management" and female employees as "administrative," and that management positions had greater prestige and higher pay potential.

Plaintiff expressed on multiple occasions that she was happy working for defendant, and defendant frequently expressed appreciation for and praised plaintiff's work. Plaintiff's base salary was increased faster than any other employee's in Nuvo's history. Beginning with her thirty-day performance review, plaintiff consistently received high ratings. At plaintiff's six-month review, Dave Brown noted that plaintiff was frequently late and often would not come to work if Emily Brown was out of town. He further found that plaintiff had some issues with accuracy, though plaintiff received high overall ratings. Plaintiff received two formal discipline notices for absenteeism and violating company policies, specifically regarding not calling in to work if she was sick.

In the fall of 2021, plaintiff took on an assignment for defendant using Google spreadsheets. She does not dispute that Emily Brown did not promise plaintiff any additional specific compensation for working on the Google spreadsheet project. In November 2021, plaintiff was given a raise, and Emily Brown took plaintiff's work on the Google spreadsheet project into account when giving plaintiff the raise. In late 2021, plaintiff received a $5,000 bonus for hard work.

Plaintiff's offer letter, which defined her compensation, refers only to salary. While plaintiff worked for defendant, she more than doubled her salary, from $41,000 per year to $85,000

3

per year. At her six-month review, in May 2021, plaintiff received a $2,000 raise. Plaintiff received another raise in November 2021. While plaintiff was requesting raises, defendant was implementing a 401k program and switching health insurance programs, so defendant tried find creative ways to increase plaintiff's compensation, including by considering bonuses and a company car, rather than continuing to give her raises. Plaintiff received a $20,000 raise in February 2022, bringing her salary to $85,000. Plaintiff was told she would also receive a company car, and was asked to look into whether defendant should lease or buy the car for her use. Defendant also offered plaintiff a $20,000 bonus at the end of the year. Plaintiff contends that she repeatedly communicated to the Browns about pay inequities in the office and that female employees were not making as much as their male counterparts.

Plaintiff contends that when she began at Nuvo, she identified several issues with its payroll system, policies, and collections practices. Plaintiff conducted an audit and, in the first quarter of 2022, recovered almost $250,000 for defendant. Plaintiff asserts that she was promised that she would be paid a percentage commission on any amount recovered through audits, but she was never paid a commission. This was in contrast to male employees, whose total compensation was substantially comprised of commissions. *See* [DE 31] ¶¶ 267-269.

Plaintiff contends that she communicated concerns regarding workplace stress and anxiety to Dave Brown and Tucker Goodman. Plaintiff reported at her six-month review that she felt like she was in a fog which was affecting her personally. In the first quarter of 2022, plaintiff's father was diagnosed with cancer. Emily Brown and Dave Brown were concerned about plaintiff's mental health. When asked by Dave Brown, plaintiff did not say that her job was causing her stress.

Plaintiff admits that her relationship with Emily Brown had gotten rocky during the last two to three months of her employment, or January to April 2022. In January 2022, plaintiff told

4

other of defendant's employees that she was looking for a different job. On May 5, 2022, a week before she was suspended, plaintiff inquired about restructuring her compensation. On May 9, 2022, Emily Brown indicated that she and Dave were prepared to further discuss plaintiff's base pay.

On May 13, 2022, plaintiff vomited in her car on the way to work. Emily Brown went to plaintiff's car and plaintiff did not explain to Emily why she had thrown up. The same day, plaintiff sent an email to Emily Brown, Dave Brown, Tucker Goodman, and a human resources email address that plaintiff believes went to Emily and Dave Brown (13 May email). The 13 May email responded to an email from Emily Brown regarding a CFO candidate. In the 13 May email, plaintiff expressed frustration regarding her perceived lack of communications around hiring a fractional CFO. The 13 May email further describes two specific instances with Emily Brown plaintiff used in an attempt to illustrate Ms. Brown's lack of communication skills, noting that Ms. Brown routinely disputed facts in order to fit with her own narrative. Plaintiff further described her own and other employees' anxiety at work, stress, emotional episodes, and sleeplessness due to Ms. Brown's indecisiveness, her lack of action, her changing of the rules, and lack of resources at the company. *See, generally,* [DE 30-7]. Plaintiff specifically identified another female employee as having panic attacks at work.

In response to the 13 May email, Emily Brown called other members of the leadership team. Ms. Brown spoke to Bob Stein, who told her that plaintiff had tried to solicit him to start a competing company. Mr. Stein told the same to Dave Brown. Plaintiff objects to the truth of this statement and contends that Mr. Stein introduced the idea of a competing company to her. Defendant suspended plaintiff on May 16, 2022, but did not suspend Mr. Stein. The next day, plaintiff filed a complaint with Google claiming intellectual property rights in the Google

spreadsheets she had created. This complaint caused defendant to not be able to access the Google spreadsheets. Dave Brown then began looking into plaintiff's work for defendant and found errors in plaintiff's work, including that she had overpaid herself and given herself an unauthorized raise. Plaintiff disputes this.

Whether plaintiff resigned or was terminated by defendant is in dispute. Defendant contends that, prior to meeting with defendant about her suspension, plaintiff resigned, though it would have terminated her employment if it had the opportunity. *See* [DE 31] ¶¶ 207-08. One of the reasons for termination would have been plaintiff's alleged interest in starting a competing company. *Id.* ¶ 209. Plaintiff contends that she was forced to leave Nuvo. *Id.* ¶ 275. After plaintiff's employment ended, plaintiff wanted to hurt defendant, and Emily Brown specifically, and she told other of defendant's employees that she would get the last laugh. Months after plaintiff was no longer defendant's employee, she contacted Verizon, one of defendant's largest accounts, and alleged that defendant was violating its contract with Verizon because she was angry at defendant and hoped that Mr. Stein would lose his job with defendant.

On November 9, 2022, plaintiff filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC). Plaintiff's EEOC charge indicates that defendant treated male employees more favorably and that male employees were paid better than female employees. Plaintiff also filed a complaint with the North Carolina Department of Labor (NCDOL). After she failed to respond to the NCDOL's request for additional information, the NCDOL administratively closed her complaint and informed her that it would not issue a right-to-sue letter. [DE 30-9].

6

DISCUSSION

A motion for summary judgment may not be granted unless there are no genuine issues of material fact for trial and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "Where, as here, the nonmoving party bears the ultimate burden of proof at trial, the moving party may discharge its initial burden at summary judgment by 'showing . . . that there is an absence of evidence to support the nonmoving party's case.'" *Anderson v. Diamondback Inv. Grp.*, LLC, 117 F.4th 165, 174 (4th Cir. 2024) (quoting *Celotex Corp.*, 477 U.S. at 325).

If that burden has been met, the nonmoving party must then come forward and establish the specific material facts in dispute to survive summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588 (1986). In determining whether a genuine issue of material fact exists for trial, a trial court views the evidence and the inferences in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007). However, "[t]he mere existence of a scintilla of evidence" in support of the nonmoving party's position is not sufficient to defeat a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). "A dispute is genuine if a reasonable jury could return a verdict for the nonmoving party. A fact is material if it might affect the outcome of the suit under the governing law." *Libertarian Party of Virginia v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (internal quotation marks and citations omitted). Speculative or conclusory allegations will not suffice. *Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 649 (4th Cir. 2002).

**A. Title VII**

(1) *Disparate treatment, pay, and discipline*

7

In her amended complaint, plaintiff alleges that defendant discriminated against her based on her sex, female, by, for example, (1) being deemed an administrative employee when male counterparts were considered management, (2) being relegated to a lower job level, such as administrative and support positions, than male employees, and (3) by not being paid her negotiated wages, unlike her male counterparts. Amd. Compl. ¶¶ 52-55. Plaintiff describes her claims as disparate pay, disparate treatment, and disparate discipline claims. [DE 33] at 4. Defendant first argues that the majority of plaintiff's Title VII discrimination claim is untimely. An individual alleging discrimination in violation of Title VII must first file an administrative charge with the EEOC generally within 180 days of the alleged unlawful act. 42 U.S.C. § 2000e-5(e)(1). The failure to timely file a charge with the EEOC bars the claim in federal court. *McCollough v. Branch Banking & Trust Co.*, 35 F.3d 127, 131 (4th Cir. 1994); *see also Ft. Bend County, Texas v. Davis*, 139 S. Ct. 1843, 1846 (2019) (180-day time period is a mandatory prerequisite to suit but not jurisdictional).

Plaintiff's suspension and alleged constructive termination occurred within 180 days of her EEOC charge, and thus any claims based on those actions are timely. Plaintiff's discriminatory pay claims are also timely as they allegedly continued up until plaintiff's last day with defendant. *See Taylor v. Millennium Corp.*, No. 1:15-CV-1046, 2016 WL 927185, at *3 (E.D. Va. Mar. 4, 2016). The Court further deems plaintiff's disparate treatment claims timely based on a continuing violation theory. *See Adams v. Trs. of Univ. of N. Carolina-Wilmington*, No. 7:07-CV-00064-H, 2008 WL 10686525, at *5 (E.D.N.C. Mar. 31, 2008).

Plaintiff has forecast sufficient evidence to defeat summary judgment on her Title VII discrimination claims. To establish a prima facie claim for Title VII disparate treatment, a plaintiff must show membership in a protected class, that she was performing her job satisfactorily, that

she suffered adverse employment action, and that she was treated differently from employees who were similarly situated but outside her protected class. *Coleman v. Maryland Ct. of Appeals*, 626 F.3d 187, 190 (4th Cir. 2010). Defendant must then produce evidence of a non-discriminatory reason for any adverse action, and the burden then shifts back to plaintiff to show that these reasons are pretext for discrimination. *Jacobs v. N.C. Admin. Off. of the Cts.*, 780 F.3d 562, 575 (4th Cir. 2015). Plaintiff proceeds under a mixed-motive theory, and thus she must ultimately show that her sex was *a* motivating factor in any adverse action. *Duvall v. Novant Health, Inc.*, 95 F.4th 778, 788 (4th Cir. 2024).

Plaintiff is a member of a protected class and she suffered adverse employment action when she was, at a minimum, suspended. Material issues of fact are in dispute as to whether plaintiff's job performance was satisfactory, whether plaintiff and other female employees were treated differently and paid less than similarly situated employees based on sex, whether plaintiff was constructively discharged or whether she quit, and whether she was more harshly disciplined because of her sex. *See, generally*, [DE 33] at 7-12. Finally, material facts are in dispute as to whether defendant's proffered basis for any alleged adverse action was pretextual. Defendant's motion as to this claim is denied.

(2) *Retaliation*

A plaintiff proceeding on a claim for retaliation in violation of Title VII must be able to ultimately prove that (1) that she engaged in protected activity; (2) that the employer took an adverse employment action against her; and (3) that there is a causal nexus between the protected activity and the adverse action. *Foster v. Univ. of Maryland-E. Shore*, 787 F.3d 243, 250 (4th Cir. 2015). Protected activity for a Title VII retaliation claim falls into two categories—opposition and participation. *E.E.O.C. v. Navy Fed. Credit Union*, 424 F.3d 397, 406 (4th Cir. 2005). "Activities

9

that constitute participation are outlined in the statute: (1) making a charge; (2) testifying; (3) assisting; or (4) participating in any manner in an investigation, proceeding, or hearing under Title VII." *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 259 (4th Cir. 1998). Oppositional activities protected by Title VII include "staging informal protests and voicing one's own opinions in order to bring attention to an employer's discriminatory activities, as well as complaints about suspected violations[.]" *Navy Fed.*, 424 F.3d at 406 (cleaned up, citations omitted). To prevail on a retaliation claim, plaintiff must show that she "*subjectively* (that is, in good faith) believed" that there was a Title VII violation "and that [her] belief 'was *objectively* reasonable in light of the facts.'" *Johnson v. Mechanics & Farmers Bank*, 309 F. App'x 675, 685 (4th Cir. 2009).

It is undisputed that plaintiff did not make a charge of discrimination, testify, or assist or participate in any investigation or proceeding under Title VII. Plaintiff relies on actions she contends are oppositional, specifically voicing her opinion to bring attention to defendant's discriminatory activities. In support, plaintiff relies on her 13 May email and alleged weekly reports regarding gender disparities.

The 13 May email does not constitute protected activity. The 13 May email addresses plaintiff's concerns about not being "looped in" on bringing in a CFO, plaintiff's personal working relationship with Emily Brown, and plaintiff's belief that Ms. Brown makes decisions and takes actions which do not match with prior discussions and agreements. [DE 30-7]. Plaintiff does discuss other employees (and company visitors) feeling stress and tension in the office environment. Plaintiff references two employees specifically, both women, but nothing in the email even plausibly suggests that this is a report of sex discrimination. The 13 May email addresses what plaintiff believed to be a stressful, unhealthy work environment generated by Ms. Brown's inability to lead. The 13 May email does not constitute protected activity under Title VII.

10

*See Buck v. Modine Mfg. Co.*, 776 F. Supp. 3d 357, 373 (W.D. Va. 2025) (complaints arising from personality conflicts, poor relationships, and poor communication not protected activity).

"[A] complaint constitutes protected activity only if it was directed at 'an unlawful employment practice' under Title VII. *Cosby v. S.C. Prob., Parole & Pardon Servs.*, 93 F.4th 707, 718 (4th Cir. 2024). There is a genuine issue of material fact as to whether plaintiff's complaints to defendant about inequitable compensation and pay practices constitute protected activity and whether they are causally connected to her suspension and/or constructive termination. The Court denies the motion for summary judgment based on internal reports of pay inequities.

## B. Wrongful discharge

Plaintiff alleges two claims for wrongful termination in violation of North Carolina public policy. The first is based on retaliation for reporting violations of the NCWHA and the second is based on retaliation for reporting OSHANC violations. Plaintiff brings her wrongful discharge claim not directly under North Carolina's Retaliatory Employment Discrimination Act (REDA), which prohibits retaliatory actions taken by employers against employees who, in good faith, exercise or threaten to exercise their protected rights as employees in North Carolina, N.C. Gen. Stat. § 95-241, but under the common law "with REDA as the source of North Carolina public policy." *Carr v. United States*, No. 4:17-CV-167-D, 2018 WL 5074671, at *7 (E.D.N.C. Oct. 17, 2018).[1] Accordingly, and in light of the holding in *Carr*, the Court does not reach defendant's exhaustion argument.

> To establish a prima facie case of wrongful termination based on retaliation, plaintiff must show "(1) that he exercised his rights as listed under N.C. Gen.Stat. § 95–241(a), (2) that he suffered an adverse employment action, and (3) that the alleged retaliatory action was taken because the employee exercised his rights under N.C. Gen.Stat. § 95–241(a)." If plaintiff presents a prima facie case of retaliatory

---

[1] At the Rule 12(c) stage, the Court construed plaintiff's wrongful discharge claims as being brought under REDA. However, in her opposition to the motion for summary judgment, plaintiff makes clear she brings her claims under the common law and not REDA.

11

discrimination, then the burden shifts to the defendant to show that he "would have taken the same unfavorable action in the absence of the protected activity of the employee." N.C. Gen.Stat. § 95–241(b) (2003). "Although evidence of retaliation in a case such as this one may often be completely circumstantial, the causal nexus between protected activity and retaliatory discharge must be something more than speculation."

*Wiley v. United Parcel Serv., Inc.*, 164 N.C. App. 183, 186–87 (2004) (cleaned up).

Plaintiff alleges that she engaged in NCWHA protected activity when she lodged internal complaints regarding the misallocation of paid time off and the failure to pay wages due and owing to employees, including herself. Internal complaints can be protected under REDA where they lead to an investigation, where they are made to someone other than a supervisor, and where the complaint is primarily focused on the alleged violation of, as is relevant here, the NCWHA or OSHANC. *Driskell v. Summit Contracting Grp., Inc.*, 828 F. App'x 858, 867 (4th Cir. 2020).

Plaintiff contends that she lodged wage and hour complaints consistently throughout her employment at Nuvo, that she raised these complaints to the heads of the company, and that she did so on a weekly basis. As this issue is in dispute, the Court denies defendant's motion as to plaintiff's NCWHA complaints.

As for plaintiff's alleged OSHANC complaints, defendant correctly argues that OSHANC does not expressly protect against workplace stress. N.C. Gen. Stat. § 95-129(1) ("Each employer shall furnish to each of his employees conditions of employment and a place of employment free from recognized hazards that are causing or are likely to cause death or serious injury or serious physical harm to his employees[.]"). Plaintiff has cited no North Carolina case construing OSHANC to cover mental health. The Court declines to expand OSHANC to this context, and it determines that plaintiff's complaints about workplace stress were not protected activity. The Court grants defendant's motion as it pertains to retaliation based on any alleged OSHANC violation.

12

**C. NC Wage and Hour Act**

Plaintiff brings a direct claim under the NCWHA. She alleges that defendant failed and refused to pay her all owed, earned and promised wages. Plaintiff admits she was paid her salary, received raises, and received multiple bonuses. The NCWHA "prevents employers from denying their employees earned wages." *Irwin v. Fed. Express Corp.*, No. 1:14-CV-00557, 2016 WL 7053383, at *8 (M.D.N.C. Dec. 5, 2016). Under the NCWHA, wages "include[] sick pay, vacation pay, severance pay, commissions, bonuses, and other amounts promised when the employer has a policy or a practice of making such payments." N.C. Gen. Stat. § 95-25.2(16).

Plaintiff has established that genuine issues of material fact exist as to whether she was entitled to a $20,000 bonus or a company car based upon her February 14, 2022, meeting with Emily and Dave Brown.[2] *See* [DE 37]. The Court will deny defendant's motion for summary judgment as to this claim.

In sum, when viewing the evidence and inferences in the light most favorable to plaintiff, plaintiff has created genuine issues of material fact as to her claims regarding disparate treatment, retaliation, and wrongful discharge based on sex and pay inequities. Defendant is entitled to summary judgment, however, on plaintiff's claims arising from the work environment at Nuvo.

## CONCLUSION

Accordingly, for the foregoing reasons, defendant's motion for summary judgment [DE 27] is GRANTED IN PART and DENIED IN PART. Plaintiff's Title VII discrimination, Title VII retaliation based on complaints of pay inequities, North Carolina wrongful discharge based on complaints of pay inequities, and her North Carolina Wage and Hour Act claims will proceed to

---

[2] In her opposition to the motion to dismiss, plaintiff does not argue that she was entitled to a bonus based on her Google spreadsheet project. [DE 33] at 28. This issue is thus waived.

13

trial. Defendant is entitled to summary judgment on plaintiff's Title VII retaliation and North Carolina wrongful discharge claims based on defendant's work environment and OSHANC.

Plaintiff's motion for leave to file exhibit manually [DE 34] is GRANTED, and the Court has received the manually filed exhibit. [DE 37]. The joint motion to stay and/or extend pretrial deadlines [DE 36] is GRANTED.

A jury trial will be conducted during the Court's December 2025 term at Elizabeth City, with a specific date and time to be set by separate notice. This matter is REFERRED to United States Magistrate Judge Jones to conduct a pretrial conference.


SO ORDERED, this **29** day of September 2025.


TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE